United States District Court
Southern District of Texas
**ENTERED**
December 15, 2023
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GARY DON BEASON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:23-CV-00163 |
| | § | |
| WARDEN HOLMES, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Gary Don Beason, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. No. 1.)  Plaintiff is currently confined at the McConnell Unit in Beeville, Texas.  He sues McConnell Unit Senior Warden Elbert Holmes ("Warden Holmes") in both his official and individual capacities.  *Id*. at 1.  Liberally construed, Plaintiff asserts claims against Warden Holmes under the First, Eighth, and Fourteenth Amendments to the United States Constitution.  Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

In his complaint, Plaintiff generally seeks to hold Warden Holmes liable for allegedly denying his due process rights and liberty interests in relation to a June 2023 lockdown at the McConnell Unit, exposure to excessive heat in his prison cell, denial of access to respite, and denial of access to the courts, all without a disciplinary hearing.  *See* Doc. No. 1, pp. 2-6, 8.  Plaintiff seeks monetary and injunctive relief.  *Id.* at 6-7.

At the Court's direction, Plaintiff responded to a questionnaire, providing additional details about his claims.  (Doc. No. 22.)  The undersigned is satisfied that Plaintiff has pleaded

his best case.  Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), the undersigned now recommends that Plaintiff's claims be DISMISSED.

### A. *Jurisdiction.*

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

### B. *Background.*

#### 1. *Overview of Plaintiff's § 1983 action.*

Plaintiff is a prisoner in the Texas Department of Criminal Justice – Correctional Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas. Liberally construed, Plaintiff generally claims that Warden Holmes violated his First, Eighth, and Fourteenth Amendment rights by imposing a lockdown on the McConnell Unit in June 2023, and needlessly continuing it beyond the time necessary to achieve its purpose.  This, Plaintiff asserts, violated his Fourteenth Amendment due process rights, because Plaintiff himself had allegedly violated no disciplinary rule.  And because of the allegedly hot conditions in the McConnell Unit during the Texas summer of 2023, Plaintiff asserts that he suffered physical injury because of the lockdowns and because of Warden Holmes' alleged deliberate indifference. Finally, Plaintiff alleges that he was wrongfully denied the opportunity to send outgoing mail, in violation of his First Amendment right to access the courts.

### 2. *Details of Plaintiff's allegations.*

Review of Plaintiff's complaint (Doc. No. 1) and his responses to the Court's questionnaire (Doc. No. 22) reveal the allegations discussed here.  Plaintiff's factual allegations are taken as true for purposes of this opinion.

### a. *Lockdown claim.*

Plaintiff states that he is 65 years old, that he arrived at the McConnell Unit in 2011, and that he has been diagnosed with hypertension; he has been prescribed hypertension and unspecified cholesterol medication.  (Doc. No. 22, pp. 1-2.)  Plaintiff also states that he has chronic back pain from an old oil field injury decades ago.  *Id.* at 2.  Plaintiff claims to be "medically unassigned due to his back injuries," meaning that he is "not required to work any job that would aggravate, or cause muscle spasms due to injury."  *Id.*  Plaintiff makes no allegation that he is heat-sensitive because of any medical condition or medication.

Plaintiff states that a security incident occurred at the McConnell Unit on June 16, 2023.  This incident, Plaintiff alleges, involved an inmate assault on a female guard.  (Doc. No. 1, p. 2.)  A unit-wide lockdown was then declared.  *Id.*  Plaintiff alleges that the heat conditions in his cell at that time were dangerous: he asserts that the temperature on June 16 was 94 degrees, with a heat index of 107 degrees.  *Id.* at 3.  Plaintiff claims that the lockdown conditions denied him access to ice water, or respite showers to cool off.  *Id.*  More generally, Plaintiff claims that temperatures in his cell reach approximately 130 degrees during the afternoons.  *Id.* at 3.

Plaintiff alleges that the lockdown continued for several additional days, through June 19, even though there was "no evident security threat."  (Doc. No. 1, pp. 3-4.)  When asked how he knew that there was no security threat, Plaintiff responded that there "could not have been a security threat as all offenders were locked down, the only security threat could have been

3 / 28

shortage of staff….”  (Doc. No. 22, pp. 3-4.)  “However shortages of staff mean overcrowding

and constitute cruel and unusual punishments ….”  *Id.* at 4.  Plaintiff continues:

> The only evidence I have that there was no security threat really only exists in the
> interaction with officers and inmates that were free to work and move about the
> unit.  When Warden Naverette[1] locked the unit down on Sept[ember] 4th 2023
> some officers claimed it was another annual shakedown, and I asked them what
> the June 16th lockdown was for, they all replied it was due to that incident where
> the inmate pulled the female guard into the cell per testimony of Sgt. Fernandez.

*Id.*

In his original complaint, Plaintiff stated that his “row” of cells was allowed one hour of

respite on June 17.  (Doc. No. 1, p. 3.)  His row was also allowed a respite shower on June 17.

*Id.* at 4.  Inmates were again allowed out of their cells for one hour on the evening of June 18.

*Id.*  Plaintiff states that he also was permitted to go to the lunch meal on June 16.  (Doc. No. 22,

p. 4.)  In response to the Court’s questions, Plaintiff stated that he was locked in his cell “all day

long on June 17, 18, 19 ….”  *Id.*  Starting on June 20, inmates were allowed to leave their cells

for showers and privileges.  *Id.* at 4-5.  During this time, inmates in the dayroom could pass ice

water to inmates who were in their cells.  *Id.* at 5.

Despite these instances of time out of his cell, Plaintiff claims that he had no access to

respite “from the latter part of June 16 to the 19th.”  (Doc. No. 22, p. 5.)  Liberally construed,

Plaintiff states that he requested access to respite, but that he was denied, with “officers

claim[ing] there was no movement.”  *Id.*  Plaintiff acknowledges that “officers may have passed

out ice water once a day, sometimes twice a day, but at least one day there was no ice water

passed out.”  *Id.* at 5.  Plaintiff also acknowledged that his cell had running water, but stated that

it was “room temperature.”  *Id.*

---

[1]  Warden Holmes has apparently been reassigned since the June lockdown, and is now TDCJ-CID’s Region IV Director.  *See* https://www.tdcj.texas.gov/unit_directory/reg4.html (last visited Dec. 15, 2023).

Plaintiff asserts that the facility-wide lockdown deprived him of his liberty interest in being out of his cell: he claims that the lockdown is "clearly corporal punishment designed to send a message" and that he had been locked down without any allegation or finding of a disciplinary violation by him.  (Doc. No. 1, p. 4.)  Plaintiff contends that he has a liberty interest in "dayroom activities" and that his confinement in lockdown conditions without a rule infraction or disciplinary hearing threatened his life and thus amounted to cruel and unusual punishment.  *Id.* at 5, 6.

Asked what injuries he sustained from the three-plus days of lockdown, Plaintiff stated: "stress and heat related rashes."  (Doc. No. 22, p. 5.)  He stated that he also allegedly suffered "[irrevocable] stress, anguish, heat rashes, boils, dehydration, hypertension symptoms of heart attack, and heat exhaustion."  *Id.* at 3.  Plaintiff stated that after June 19 he "had stroke like symptoms and had to go to medical, was given an EKG – non responsive."  *Id.* at 5.  Plaintiff explained that, as of the time when he answered the Court's questions, the rash between his legs was "ongoing but is getting better."  *Id.* at 5-6.  Plaintiff states that he requested and received medical care from a physician assistant for the rash and for a boil on his tailbone and that he was prescribed penicillin and other unspecified pills.  *Id.* at 6.  A second physician assistant prescribed lotion to Plaintiff "and triamcinolone acetone and water pills – hydrochloride something" and Benadryl for itching.  *Id.*  Shortly thereafter, Plaintiff was moved to an air-conditioned housing location.  *Id.*

The Court asked Plaintiff what allegation he was making about the specific involvement of Warden Holmes – the only defendant in this case.  In response, Plaintiff states that Warden Holmes must have given the order to lock down the McConnell Unit.  (Doc. No. 22, p. 2.)  Plaintiff explains:

> So Warden Holmes was responsible for the June 16th arbitrary lockdown, which was designed to send a message to all offenders that the June 16th offense by one offender pulling a female officer into his cell, would not be permitted, and punishment for [non-existent] offenses is a civil rights violation as it denies due process and removes an offenders classification status privileges, as well as state approved trusty class privileges without an offense report, or disciplinary hearing.

> Denial of these [privileges] … simply because he had the authority, caused [irrevocable] stress, anguish, heat rashes, boils, dehydration, hypertension symptoms of heart attack, and heat exhaustion.

*Id.* at 3.

### b. *Mail claim.*

Plaintiff alleges that on the morning of June 20, 2023 he asked a corrections officer to take his outgoing mail for dispatch.  (Doc. No. 1, p. 8.)  The officer did so, but then allegedly returned and said "there is no mail, they got paper over the mail box showing this is a lockdown."  *Id.*  Plaintiff alleges that this denial of outgoing mail constitutes a due process violation and that he has been denied his liberty interest of "access to courts, mail to family, and friends, and religious faith based institutions without benefit of a rule infraction, or disciplinary hearing."  *Id.*

In response to the Court's questions, Plaintiff states that outgoing mail was stopped "for several days."  (Doc. No. 22, pp. 6-7.)  Asked what specific outgoing mail he had been prevented from sending, Plaintiff stated that he could not specifically remember, but "I would guess it was a letter to the Southern District U.S. Court, as I probably opened it up and wrote in that I couldn't get them to pick up the mail."  *Id.* at 7.  Plaintiff alleges no other mail that he was unable to send.  *See id.*  He also alleges no physical injury stemming from the denial of outgoing mail, "but mental and emotional stress because they were not doing what the law required."  *Id.*

The Court asked Plaintiff what allegation he was making about the specific involvement of Warden Holmes – the only defendant in this case – in the alleged denial of outgoing mail. Plaintiff did not allege that Warden Holmes personally ordered the stoppage of outgoing mail. Rather, Plaintiff responded: "I never saw Warden Holmes, but TDCJ [hierarchy] holds him personally responsible for all bad acts of personnel under his command."  (Doc. No. 22, p. 8.)

### c. Grievance process not yet complete.

Plaintiff alleges that he filed a Step 1 grievance "and will follow through with Step 2." (Doc. No. 1, p. 6.)  In response to the Court's questionnaire, Plaintiff stated that in his grievance he alleged "abuse of authority for instituting corporal punishment wherein all offenders were being punished for the bad acts of one inmate."  (Doc. No. 22, p. 8.)  He stated that, as of the date of his questionnaire response, he had not received a response to his Step 1 grievance.  *Id.* Plaintiff also acknowledged that he had not yet filed a Step 2 grievance.  *Id.*

### d. Relief sought.

In his complaint, which he dated with his signature on June 20, 2023, Plaintiff states that he seeks "monetary judgement for deliberate indifference as punitive relief, and injunctive relief ordering Warden Holmes to restore liberty interest, and consider intense heat as a life threatening [obstacle] to prisoners."  (Doc. No. 1, p. 6.)  Plaintiff also seeks a "$10,000.00 punitive award for the duress and subjection to excessive temperatures without due process, and $10,000.00 award for deliberate [indifference] in denying liberty interest in a healthy prison environment."  *Id.* at 7.

### e. Summary of claims.

From these facts, and affording liberal construction to Plaintiff's submissions in this case, the undersigned discerns the following claims:

- Eighth Amendment cruel and unusual punishment claims against Warden Holmes in his official and individual capacities for monetary relief, for subjecting Plaintiff to the facility-wide lockdown and thus depriving Plaintiff of privileges;

- Eighth Amendment cruel and unusual punishment claims against Warden Holmes in his official and individual capacities for monetary relief, for subjecting Plaintiff to the facility-wide lockdown and thereby causing the physical injuries Plaintiff allegedly suffered;

- Fourteenth Amendment due process claims against Warden Holmes in his official and individual capacities for monetary and injunctive relief; and

- First Amendment denial of mail claims against Warden Holmes in his official and individual capacities for monetary relief.

### C. Legal standard for screening of Plaintiff's complaint.

When a prisoner seeks to proceed *in forma pauperis*, the Court is to evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous or malicious, that it fails to state a claim upon which relief can be granted, or that it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A; *see* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant).  A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no

arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "Well-pleaded" means that the plaintiff's factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or a statement of the legal elements of a claim. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.* At the same time, courts are not at liberty to create a cause of action where there is none. *See Cledera v. United States*, 834 F. App'x 969, 972 (5th Cir. 2021) (citing *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980)).

Pleadings filed by *pro se* litigants like Plaintiff are construed using a less stringent standard of review.  Document filed by *pro se* litigants are to be liberally construed, and *pro se* complaints, however inartfully drafted they might be, are held to less stringent standards than formal pleadings drafted by lawyers.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A plaintiff's well-pleaded factual allegations in the complaint are to be taken as true for purposes of screening, but such deference does not extend to conclusory allegations, unwarranted factual inferences, or legal conclusions.  *DeMarco v. Davis*, 914 F.3d 383, 386-87 (5th Cir. 2019).

### D.  Analysis: Plaintiff's § 1983 claims should be dismissed.

Liberally construed, Plaintiff brings claims against Warden Holmes for allegedly violating his rights under the First, Eighth, and Fourteenth Amendments.  Warden Holmes is the only defendant in this case.  For the reasons discussed below, Plaintiff's claims, all brought under § 1983, should be dismissed.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.  *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

Warden Holmes, the lone defendant in this case, is a supervisory official.  "Personal involvement is an essential element of a civil rights cause of action."  *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).  There is no vicarious or *respondeat superior* liability of

supervisors under § 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. A plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676.

Thus, a supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011). Supervisory liability without overt personal participation in the offensive act thus can lie only if the supervisory official "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind the constitutional violation." *Thompkins*, 828 F.2d at 304 (internal quotations omitted). "A policy is normally an official statement, ordinance, or regulation, but in certain circumstances a persistent, widespread practice that is so commonplace as to constitute a custom can also be treated as policy." *McNeil v. Caruso*, No. 17-01688, 2019 WL 1435831, at *2 (M.D. La. Mar. 28, 2019) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

### 1. The Eleventh Amendment bars Plaintiff's claims against Warden Holmes in his official capacity for monetary relief. All of those claims should be dismissed without prejudice.

Plaintiff states that he sues Warden Holmes in both his official and individual capacities, and he seeks (among other things) monetary relief. (Doc. No. 1, pp. 1, 7.) A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment to the United

States Constitution, however, prevents federal courts from hearing cases brought by citizens of a State against their own State. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). It also bars claims for money damages against a state or state agency. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Tex. Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). An action for monetary damages against a state official in his or her official capacity is one against the state itself and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment barred prisoner's suit for money damages against prison officials in their official capacities).

Thus, with official capacity claims such as those lodged in this case, "prospective injunctive or declaratory relief against a state [official] is permitted … but retrospective relief in the form of a money judgment in compensation for past wrongs … is barred." *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008) (citation omitted). Plaintiff's liberally construed claims under the First, Eighth, and Fourteenth Amendments against Warden Holmes in his official capacity for money damages (as opposed to injunctive relief), are therefore barred by the Eleventh Amendment. All of Plaintiff's claims for money damages against Warden Holmes in his official capacity should be dismissed.

Because Eleventh Amendment sovereign immunity deprives the Court of jurisdiction over claims seeking money damages against prison official in their official capacities, dismissal of such claims must be without prejudice. *See Bell v. Hinojosa*, No. 2:22-cv-00140, 2023 WL 2072412, at *4 (S.D. Tex. Feb. 16, 2023) (Ramos, J.) (citing *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996)).

### 2. The Court should dismiss Plaintiff's claims under the Eighth and Fourteenth Amendments based on the imposition of the facility-wide lockdown itself.

Plaintiff claims that Warden Holmes denied his Fourteenth Amendment due process rights by imposing the facility-wide lockdown even though Plaintiff himself allegedly had committed no disciplinary infraction or received a hearing. The facility-wide lockdown, he says, deprived Plaintiff of the opportunity to engage in dayroom activities outside his cell. (Doc. No. 1, pp. 4-6; Doc. No. 22, pp. 2-3.) He seeks a finding of liability against Warden Holmes in his individual capacity and demands monetary relief. Plaintiff fails to plausibly allege any viable constitutional violation with regard to the imposition of the lockdown, so his claims should be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

A convicted prisoner has no constitutional right to be free from "lockdown" for any particular period of time, even without a hearing. This is because placement in lockdown, either individually or as part of a group, does not present an "atypical, significant deprivation[] of liberty in relation to the ordinary incidents of prison life." *See Johnson v. Lewis*, 335 F. App'x 481 (5th Cir. 2009) (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995) (disciplinary segregation did not violate protected liberty interest, and even inmates in general population experienced significant "lockdown time" of 12 to 16 hours per day); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992)). The lack of a hearing prior to imposition of a lockdown also does not result in deprivation of a cognizable liberty interest. *See Hernandez v. Velasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008) (13-month lockdown without prior hearing).

Here, accepting Plaintiff's factual allegations as true and assuming for purposes of screening that Warden Holmes ordered the June facility-wide lockdown and that Plaintiff was

not afforded a hearing, Plaintiff has nevertheless failed to plausibly allege a violation of any

protectable liberty interest.  Plaintiff has no liberty interest in being free from a facility-wide

lockdown, either with or without a hearing – and certainly not a three-ish day lockdown like the

one of which he complains here – so Warden Holmes' direction of such a lockdown did not

violate any right of Plaintiff's.  Although Plaintiff complains that he was locked down despite his

classification and trusty status, *see* Doc. No. 22, p. 3, absent extraordinary circumstances

Plaintiff likewise has no constitutionally protectable liberty or property interest in any

classification status or trusty status.  *See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)

(citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998) ("[Prisoners] have no protectable

property or liberty interest in custodial classifications.")).  All of Plaintiff's claims stemming

from the imposition of the lockdown itself should therefore be dismissed.[2]

### 3.  The Court should dismiss Plaintiff's Eighth Amendment claim against Warden Holmes in his individual capacity.

Liberally construed, Plaintiff lodges an additional Eighth Amendment claim against

Warden Holmes in his individual capacity for monetary relief.  That claim should be dismissed.

---

[2]  Plaintiff also suggested, in response to the Court's questions, that the three-plus day June lockdown was actually imposed not because of a security threat but because of inadequate staffing.  Understaffing of the jail, Plaintiff states, would imply overcrowding, which in his view constitutes cruel and unusual punishment.  (Doc. No. 22, pp. 3-4.)  In support of his position, Plaintiff cites *Ruiz v. Estelle*, 503 F. Supp. 1265 (S.D. Tex. 1980), *aff'd in part and rev'd in part*, 688 F.2d 266 (5th Cir. 1982), *amended in part and vacated in part*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983).  Plaintiff's statement regarding overcrowding hints at an Eighth Amendment allegation of cruel and unusual punishment, but even if understaffing did imply overcrowding, the Fifth Circuit has found that overcrowding of prisons is not *per se* unconstitutional.  *See Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347-50 (1981)).  In any event, Plaintiff makes no additional factual allegations regarding overcrowding, and so the undersigned does not address the question further here.  *See Cledera*, 834 F. App'x at 972.

### a. *Plaintiff's assertions.*

The gravamen of Plaintiff's assertion is that Warden Holmes' institution of the facility-wide lockdown from June 16 to June 19 caused Plaintiff to be confined to his allegedly overly hot cell, and that respite from the heat was not afforded until the fourth day of the lockdown – Plaintiff estimates that he had no access to respite for approximately 80 hours.  (Doc. No. 22, p. 5.)  More specifically, he alleges that during the lockdown he endured temperatures in his cell that he estimates[3] reached 130 degrees in the afternoons.  (Doc. No. 1, p. 3.)  Plaintiff estimates that he was unable to access ice water or respite showers during the lockdown, despite his requests, for a total period of 80 hours.  (Doc. No. 1, p. 3; Doc. No. 22, p. 5.)  Plaintiff alleges that he sustained "stress and heat related rashes" because of the lockdown.  (Doc. No. 22, p. 5.)  He further claims that the lockdown "caused [irrevocable] stress, anguish, heat rashes, boils, dehydration, hypertension symptoms of heart attack, and heat exhaustion."  *Id.* at 3.  He adds that he "had stroke like symptoms and had to go to medical," but those symptoms occurred after June 19.  *Id.* at 5.  Notwithstanding his assertion that he was unable to access ice water or respite showers during the lockdown, Plaintiff states that he was allowed to shower on the evening of June 17 and again on the afternoon of June 18.  (Doc. No. 1, pp. 3-4.)  During the lockdown, Plaintiff additionally states, officers "may have passed out ice water once a day, sometimes twice a day, but at least one day there was no ice water passed out."  (Doc. No. 22, p. 5.)

---

[3]  Although unscientific, Plaintiff's estimate of the temperature in his cell is at least premised on some alleged factual data.  He claims that the outside afternoon temperatures during the lockdown were in the upper 90s, and that "prior to 2023, many temperature readings were taken in the cells at such outside temperatures, in 2022 summertime cell temps often exceeded 130°, so my estimate of cell temps was based on those prior recordings of 2021, 2022."  (Doc. No. 22, p. 3.)

### b. *Deliberate indifference under the Eighth Amendment.*

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend.

VIII. "The Constitution does not mandate comfortable prisons . . . but neither does it permit

inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the

conditions under which he is confined are subject to scrutiny under the Eighth Amendment."

*Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577,

581 (5th Cir. 1995) (*per curiam*) (internal quotations omitted)). Prison officials must provide

humane conditions of confinement and ensure that inmates receive adequate food, clothing,

shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result

in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the

minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes v.*

*Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).

Extreme temperatures in prison can violate the Eighth Amendment. *Yates v. Collier*, 868

F.3d 354, 360 (5th Cir. 2017); *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015); *Gates v. Cook*,

376 F.3d 323, 333 (5th Cir. 2004). "To be tantamount to the infliction of cruel and unusual

punishment, prison conditions must pose an unreasonable risk of serious damage to a prisoner's

health - an objective test - and prison officials must have acted with deliberate indifference to the

risk posed - a subjective test." *Ball*, 792 F.3d at 592 (internal quotation marks omitted)

(affirming holding that Eighth Amendment was violated when prisoners who were being treated

for hypertension and diabetes were held in very hot cells without sufficient access to heat-relief

measures); *see Webb v. Livingston*, 618 F. App'x 201, 208-09 (5th Cir. 2015) (affirming holding

that inmates with heat-sensitive medical conditions who were housed in cells where the

temperature exceeded 100 degrees had asserted facts that, if proven, would overcome qualified immunity).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). The Fifth Circuit has "consistently recognized . . . that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'" *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001)); *see also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021) ("Negligence or even gross negligence is not enough: the officials must have actual knowledge of the substantial risk"). Thus, to survive screening, a claim of Warden Holmes' liability must plausibly allege nonconclusory facts indicating either that Warden Holmes personally participated in the violation of Plaintiff's rights or that Warden Holmes had subjective knowledge that Plaintiff faced a substantial risk of harm to his health and safety and then disregarded that risk. *See Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir. 2021).

To demonstrate that prison conditions impose an unreasonable risk of serious damage to a prisoner's health, an inmate need not show that a death or serious injury already has occurred but rather that there is a "substantial risk of serious harm." *Ball*, 792 F.3d at 593 (citing *Gates*, 376 F.3d at 333). "Without the requisite proof of both subjective and objective components of an Eighth Amendment violation, however, merely 'uncomfortable' heat in a prisoner's cell does not reflect a 'basic human need that the prison has failed to meet' and is not constitutionally suspect." *Id.* at 592 (citing *Woods*, 51 F.3d at 581).

To plausibly allege the subjective prong of the deliberate indifference test, Plaintiff must allege that Warden Holmes was aware of facts from which the inference could be drawn that a

substantial risk of serious harm existed, and that he also actually drew that inference.  *See Domino*, 239 F.3d at 755.  In other words, Plaintiff must plausibly allege that Warden Holmes was "aware of an excessive risk to the plaintiff's health or safety, and yet consciously disregarded the risk."  *Cook v. Crow*, No. 1:20-CV-85, 2021 WL 6206795, at *3 (E.D. Tex. July 26, 2021), *adopted*, 2022 WL 23169 (E.D. Tex. Jan. 3, 2022) (citing *Farmer*, 511 U.S. at 840-41, and *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).  A defendant's subjective knowledge could be plausibly alleged in a number of ways, including inference from circumstantial evidence of which the defendant is aware, and under exceptional circumstances a defendant's knowledge of a substantial risk of harm may be inferred by the obviousness of the risk, if that official is aware of the facts from which that inference could be drawn.  *See id.*; *Farmer*, 511 U.S. at 842.  But the failure to alleviate a significant risk that an official should have perceived, but did not, does not constitute deliberate indifference.  *Farmer*, 511 U.S. at 838.

### c.  *Plaintiff fails to plausibly allege that Warden Holmes personally participated in any violation of Plaintiff's rights.*

Plaintiff fails to plausibly allege that Warden Holmes personally participated in any act that violated Plaintiff's rights.  As discussed above, Plaintiff has no constitutional right to be free from a facility-wide lockdown, so Warden Holmes' mere act of ordering such a lockdown (the Court assumes that he did, as alleged by Plaintiff, for purposes of screening) did not violate Plaintiff's rights.  Likewise, even to the extent that Warden Holmes could be found to have implemented some "policy" to impose facility-wide lockdowns in certain situations,[4] such a policy would not violate any liberty interest of Plaintiff's for the same reasons.  Thus, the act of ordering the lockdown itself does not enable Plaintiff's Eighth Amendment claim here.

---

[4] Plaintiff does not allege the existence of any such policy.

> ### d. Plaintiff fails to plausibly allege that any policy or practice promulgated by Warden Holmes caused an injury to him.

Warden Holmes, a supervisor, is the only defendant in this case. Because there is no *respondeat superior* liability under § 1983, "[s]upervisory officials are accountable for their own acts of deliberate indifference and for implementing unconstitutional policies that causally result in injury to the plaintiff." *Alderson v. Concordia Parish Correctional Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (citation omitted).

Plaintiff does not point to any policy or widespread practice promulgated by Warden Holmes of ignoring inmates' heat-related medical needs. Plaintiff does not allege the existence of any written policy to that effect, and he offers nothing, not even speculation, that Warden Holmes adopted any policy or practice or custom to endanger inmates by depriving them of heat respite measures. *Cf. Porter*, 659 F.3d at 446. "Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy." *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984). And a policy "cannot be inferred from single constitutional violations." *Id.* (citing *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (*en banc*)). Although Plaintiff refers to his own symptoms stemming from the June lockdown, he fails to allege that his symptoms were ignored by McConnell Unit staff: to the contrary, he states that he received medical treatment for physical injuries he allegedly suffered during the lockdown. *See* Doc. No. 22, pp. 5-6 (treatment for rash), 6 (treatment for boil), 5 (EKG for "stroke like symptoms"). Plaintiff therefore fails to plausibly allege that Warden Holmes promulgated any policy or practice of ignoring heat-related medical symptoms.

### e. *Plaintiff plausibly alleges an objective substantial risk to his health.*

Plaintiff has adequately alleged, for purposes of this screening, the objective existence of a substantial risk to his health.  For example, Plaintiff is 65 years old, claims that he was subjected to temperatures in his cell of approximately 130 degrees in the afternoons during the lockdown, and asserts that he suffered actual physical injuries because of the hot conditions during lockdown.

### f. *Plaintiff fails to plausibly allege Warden Holmes' subjective knowledge of substantial risk.*

Plaintiff fails, however, to plausibly allege Warden Holmes' subjective knowledge of substantial risk to inmates' health because of the heat conditions at the McConnell Unit.  Despite the Court's direction that he specify Warden Holmes' personal involvement, Plaintiff does not allege that Warden Holmes was personally aware of Plaintiff's medical needs, the alleged fact that the lockdown was placing Plaintiff at a substantial risk of serious harm, or even that the conditions at the McConnell Unit were excessively hot.  He also does not allege that Warden Holmes personally received any grievance from Plaintiff or anyone else regarding the allegedly hot conditions, or that Warden Holmes was otherwise aware of the temperature in Plaintiff's cell (or even in the area where his cell was located).  *Cf. Hinojosa v. Livingston*, 807 F.3d 657, 667 (5th Cir. 2015) (recounting allegations sufficing to establish that defendants were subjectively aware of risk posed by high temperatures); *see also Blackmon v. Garza*, 484 F. App'x 866, 873 (5th Cir. 2012).  Moreover, although satisfaction of the subjective prong of the deliberate indifference test can be inferred if the offending condition is sufficiently obvious, *see Farmer*, 511 U.S. at 842, Plaintiff likewise fails to allege any such obviousness.  Plaintiff fails to allege any facts, let alone any nonconclusory facts, indicating that Warden Holmes was personally

aware of any risk that Plaintiff faced, or that, armed with that subjective knowledge, Warden

Holmes then disregarded that risk.  *Cf. Valentine*, 993 F.3d at 281; *see Cledera*, 834 F. App'x at

972 (citing *Hughes*, 449 U.S. at 9-10).

### g.  *Plaintiff fails to plausibly allege that Warden Holmes' response to any risk was unreasonable.*

To lodge a viable claim, Plaintiff must also plausibly allege that Warden Holmes'

response to the substantial risk of serious harm was unreasonable.  Prison officials who know of

a substantial risk to inmate health or safety may nonetheless be found to be free of liability if

they responded reasonably to that risk, even if the harm was ultimately not averted.  *See Hyatt v.*

*Thomas*, 843 F.3d 172, 177-78 (5th Cir. 2016).  The official's actions must rise to the level of

deliberate indifference before liability can be found.  *See id.*

In this case, Plaintiff does not allege that Warden Holmes took any action, or omitted

taking any action, in response to any substantial risk of harm that was unreasonable.  Plaintiff

describes the measures that were taken, *see* Doc. No. 1, pp. 3-4 (showers); Doc. No. 22, pp. 4-5

(ice water), but does not plausibly allege that Warden Holmes – who is sued in his individual

capacity – personally made any decision or took any action that was unreasonable in response to

such threat.  *See Cledera*, 834 F. App'x at 972 (citing *Hughes*, 449 U.S. at 9-10).

As alleged, Plaintiff's individual-capacity Eighth Amendment claim against Warden

Holmes is therefore not viable.  His claim should be dismissed for failure to state a claim upon

which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 4.  *The Court should dismiss Plaintiff's Fourteenth Amendment claims against Warden Holmes for injunctive relief.*

The undersigned has already recommended dismissal of Plaintiff's claims for monetary

relief against Warden Holmes in his official capacity, based on Eleventh Amendment immunity.

Official capacity claims under § 1983 are limited to prospective injunctive and declaratory relief. *See Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015) (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989)).  Liberally construed, Plaintiff lodges a Fourteenth Amendment claim against Warden Holmes in his official capacity for prospective injunctive relief.  *See* Doc. No. 1, pp. 6-7 ("Plaintiff seeks … injunctive relief ordering Warden Holmes to restore liberty interest, and consider intense heat as a life threatening [obstacle] to prisoners."). Also liberally construed, Plaintiff also appears to sue Warden Holmes in his individual capacity for this same injunctive relief.  *See* Doc. No. 1, p. 1 (stating that Plaintiff sues Warden Holmes in his official and individual capacities, without limitation).

The three-plus day lockdown that is the subject of Plaintiff's lawsuit has already ended, *see* Doc. No. 22, pp. 4, 5, and Plaintiff does not allege any continuing restriction from that lockdown.  Plaintiff's requested injunctive relief of restoring his liberty interest, then, is no longer "prospective."  *See Castleberry v. Tex. Health & Human Servs. Comm'n*, No. 6:20-CV-00008, 2020 WL 3442599, at *2 (E.D. Tex. May 28, 2020).  Additionally, as discussed above, Plaintiff has no protectable liberty interest in being free from a facility-wide lockdown.  Thus, there is no protectable liberty interest for Warden Holmes to prospectively "restore." This claim should be dismissed without prejudice as moot.

Plaintiff also fails to plausibly allege any facts supporting his request for requested injunctive relief directing Warden Holmes to "consider intense heat as a life threatening [obstacle] to prisoners."  The lockdown forming the basis of this lawsuit has ended, and Plaintiff has not alleged any facts indicating that he faces any future health threat from any future lockdown.  He therefore fails to allege a live case or controversy for this Court to resolve.  *Cf. City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (to establish standing for future injury,

plaintiff must credibly explain how present facts create a real and immediate, not a conjectural or hypothetical, threat of future injury).  Moreover, because this case is not a class action, Plaintiff cannot seek relief on behalf of other prisoners.  *See McGowan v. Maryland*, 366 U.S. 420, 429 (1961) ("[T]he general rule is that a litigant may only assert his own constitutional rights or immunities."); *cf. Ali v. Immigr. & Customs Enf't*, No. 1:16-CV-037-BL, 2017 WL 881102, at *2 (N.D. Tex. Feb. 2, 2017), *adopted*, 2017 WL 880866 (N.D. Tex. Mar. 3, 2017) ("[C]ourts have prohibited *pro se* prisoner class actions from proceeding for fear that the competence of a layman representing himself is clearly too limited to allow him to risk the rights of others.").  This claim should be dismissed without prejudice.

Plaintiff's liberally construed attempt to sue Warden Holmes in his individual capacity for injunctive relief fares no better.  Although research has revealed no relevant case law in this circuit, several federal courts have concluded that "there is no basis for suing a government official for declaratory and injunctive relief in his or her individual or personal capacity."  *Hatfill v. Gonzales*, 519 F. Supp. 2d 13, 19 (D.D.C. 2007).  This is because a public official can comply with an injunction regarding performance or nonperformance of official duties only in his or her official capacity, not as an individual acting personally.  *Cf. Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) (challenged policy was carried out by defendants in their official capacities, and requested relief could only be obtained from defendants in their official capacities, not as private individuals); *Simpson v. Fed. Bureau of Prisons*, No. 1:19-cv-03173, 2020 WL 95814, at *3 (D.D.C. Jan. 8, 2020) (same).  To the extent Plaintiff's claim could be construed as a request for injunctive relief against Warden Holmes in his individual capacity, that claim should be dismissed with prejudice.

### 5. *Plaintiff's claim regarding denial of outgoing mail should be dismissed.*

Plaintiff claims that all outgoing mail was stopped because of the McConnell Unit lockdown.  He alleges that this denial occurred on June 20, 2023, at 8:30 a.m., and lasted for "several days."  (Doc. No. 1, p. 8; Doc. No. 22, p. 7.)  Plaintiff contends that the denial constituted a due process violation, because he was denied "access to courts, mail to family, and friends, and religious faith based institutions without benefit of a rule infraction, or disciplinary hearing."  (Doc. No. 1, p. 8.)  In response to the Court's questionnaire, Plaintiff explained that the denial of outgoing mail lasted for several days until "[c]omplaints to night shift supervisor made the officers start picking up the mail" and that the outgoing mail was then picked up. (Doc. No. 22, pp. 6-7.)

Asked what specific mail he was attempting to send on June 20, Plaintiff stated: "I guess it was a letter to the Southern District U.S. Court, as I probably opened it up and wrote in that I couldn't get them to pick up the mail."  (Doc. No. 22, p. 7.)  Review of Plaintiff's complaint and his questionnaire responses indicates that it was the complaint itself in this case that Plaintiff allegedly could not send because of the lockdown.  Plaintiff's complaint contains a signature page dated June 20, 2023, coming after Plaintiff's description of the remedies he seeks in this case.  (Doc. No. 1, pp. 6-7.)  The next page of Plaintiff's complaint is entitled "Complaint Continued … Offense #2" and describes the denial of mail claim.  This is consistent with Plaintiff's statement that he opened his complaint and added the claim that prison officials would not collect outgoing mail.  Plaintiff does not allege that any other outgoing mail failed to reach the Court, or that he was thwarted in attempting to send any mail to anyone else (such as family, friends, or any religious organization).  When asked what specific role Warden Holmes allegedly played in the denial of mail, Plaintiff responded that he "never saw Warden Holmes, but TDCJ

[hierarchy] holds him personally responsible for all bad acts of personnel under his command." (Doc. No. 22, p. 8.)

Plaintiff's denial of mail claim should be dismissed.  Although he couches his claim as a "due process" violation, *see* Doc. No. 1, p. 8, it is the First Amendment that protects prisoners from mail censorship that is not "reasonably related to legitimate penological interests." *Every v. Jindal*, 413 F. App'x 725, 727 (5th Cir. 2011) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 409-12 (1989).  An inmate's right of access to the courts may be violated when a prison official tampers with or interferes with his legal mail. *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993).  The Supreme Court has indicated that interference with the right of access to the courts implicates both the First Amendment and the Fourteenth Amendment's due process clause. *See Hennington v. Gorsuch*, No. 6:20-CV-00302, 2022 WL 18276844, at *5 (E.D. Tex. Nov. 28, 2022) (citing *Wolff v. McDonnell*, 418 U.S. 539, 575-76 (1974)).  But to state a claim that his constitutional right of access to the courts was violated by Warden Holmes, Plaintiff must demonstrate that his position as a litigant was actually prejudiced. *Mitchell v. Tex. Denton Cnty.*, No. 4:18-CV-00490, 2021 WL 4497680, at *13 (E.D. Tex. Aug. 13, 2021), *adopted*, 2021 WL 4477694 (E.D. Tex. Sept. 29, 2021) (citing *Lewis v. Casey*, 518 U.S. 343, 348 (1996)).

In this case, Plaintiff fails to plausibly allege a viable claim for denial of his right of access to the courts was abridged, because he fails to allege any prejudice to any litigation position.  The claims that Plaintiff was attempting to make are contained in his complaint. Plaintiff's complaint was ultimately filed, and this Court is analyzing all of Plaintiff's claims here.  Because Plaintiff fails to plausibly allege any prejudice to his position as a litigant, his denial of outgoing mail claim should be dismissed.

Plaintiff's denial of mail claim should also be dismissed because he fails to allege any facts indicating Warden Holmes' liability. As discussed above, any claim against Warden Holmes in his official capacity for monetary relief should be dismissed as barred by the Eleventh Amendment. Additionally, any denial of mail claim seeking injunctive relief against Warden Holmes in his official capacity is now moot, because Plaintiff's outgoing mail resumed after just a few days and Plaintiff does not allege any ongoing stoppage. Plaintiff's denial of mail claim against Warden Holmes in his individual capacity is likewise deficient, because Plaintiff relies solely on a theory of *respondeat superior*: Plaintiff does not allege that Warden Holmes personally did anything with regard to Plaintiff's mail, and the undersigned finds that Plaintiff has not sufficiently alleged that Warden Holmes had any personal involvement in the purported denial of Plaintiff's outgoing mail. Nor does Plaintiff allege that Warden Holmes implemented any unconstitutional policy regarding outgoing mail that resulted in a violation of Plaintiff's rights. *Cf. Porter*, 659 F.3d at 446. Plaintiff's denial of mail claim should therefore be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### E. Leave to amend?

The undersigned is recommending dismissal of Plaintiff's claims. "When the dismissal of a *pro se* complaint is appropriate, it should generally be done without prejudice in order to allow the plaintiff an opportunity to file an amended complaint." *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). But leave to amend need not be granted if amendment would be futile - for example, if an amended complaint would still fail to state a claim upon which relief may be granted. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (futility of amendment is adequate justification to refuse to grant leave to amend).

"If the prisoner has filed his complaint and submitted questionnaire responses, then the court may conclude that he has pleaded his best case such that granting him further leave to amend would be futile or cause unnecessary delay." *Clark v. Waddell*, No. 7:22-cv-00059-M-BP, 2023 WL 8605313, at *18 (N.D. Tex. Nov. 15, 2023) (citing *Witherspoon v. Waybourn*, No. 4:20-cv-1150-P, 2021 WL 2635917, at *10 (N.D. Tex. June 25, 2021) and *McLean v. King*, No. 3:20-cv-1244-C-BK, 2020 WL 6049297, at *2 (N.D. Tex. Sept. 15, 2020)); *see also Mejia v. Monroe*, No. H-18-3036, 2021 WL 765726, at *2 (S.D. Tex. Feb. 26, 2021) (Miller, J.) (finding that inmate had pleaded his best case where he was afforded an opportunity to plead facts supporting his claim through a more definite statement).  Here, Plaintiff has had the opportunity to plead his best case against Warden Holmes, including through completion of the Court's questionnaire, but none of his claims are viable.  The undersigned therefore recommends dismissal without leave to amend.

### F. Conclusion and recommendation.

The district court should take the following actions:

- DISMISS without prejudice Plaintiff's claims against Warden Holmes in his official capacity for monetary relief;

- DISMISS without prejudice Plaintiff's Fourteenth Amendment claim against Warden Holmes in his official capacity for injunctive relief;

- DISMISS with prejudice all of Plaintiff's remaining claims.[5]

---

[5]  It also appears that Plaintiff may not have exhausted his administrative remedies prior to filing suit.  *See* Doc. No. 1, p. 6; Doc. No. 22, p. 8.  Nevertheless, the undersigned is not recommending dismissal of this case at the screening stage based on failure to exhaust.  *See Coleman v. Sweetin*, 745 F.3d 756, 763 (5th Cir. 2014); *see also Khalil v. Dept. of Corrections*, No. 23-30026, 2023 WL 4401116, at *1 (5th Cir. July 7, 2023).

- IMPOSE a "strike" for purposes of 28 U.S.C. § 1915(g),[6] and DIRECT the Clerk to send notice of the dismissal to the manager of the Three Strikes List for the Southern District of Texas at <u>Three_Strikes@txs.uscourts.gov</u>.[7]

### G.  *Notice.*

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on December 15, 2023.

MITCHEL NEUROCK
United States Magistrate Judge

---

[6]  *See Silvas v. Giovannini*, No. 2:21-CV-00269, 2022 WL 103354, at *1 (S.D. Tex. Jan. 11, 2022) (Morales, J.) (imposing strike).

[7]  Plaintiff is WARNED that if he accumulates three such strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury.  *See* 28 U.S.C. § 1915(g).